THE HONORABLE THOMAS S. ZILLY

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEIF KIRCHOFF, individually and as class representative,<br><br>Plaintiff,<br><br>v.<br><br>WIPRO, INC., WIPRO TECHNOLOGIES, INC. and WIPRO, LTD, Delaware Corporations,<br><br>Defendants. | No. 2:11-cv-00568-TSZ<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENSE SUMMARY JUDGMENT MOTION**<br><br>NOTED FOR CONSIDERATION: September 14, 2012.<br><br>***ORAL ARGUMENT REQUESTED*** |

## NATURE OF CASE

This is a putative wage/hour class action. Plaintiff claims that Defendants' system for calculating pay for salaried employees during the initial and terminal weeks of employment violated the Fair Labor Standards Act, and has resulted in underpayment to salaried employees.

## RELIEF REQUESTED

Plaintiff requests that the defense motion for summary judgment be denied.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--1

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

**ISSUES**

1. Does a method for computing the daily rate of pay for salaried employees violate the Fair Labor Standards Act (FLSA) if it results in disproportionate pay depending on the pay period on which the pay is based?

2. Does a method for computing the daily rate of pay for salaried employees violate the FLSA if it results in underpayment of 77% of those salaried employees?

3. Where an employer underpays some members of a putative class using an objectively unlawful method, does a bona fide dispute over the willfulness of that underpayment exist?

**STATEMENT OF FACTS**

Plaintiff Leif Kirchoff was hired by Defendants on July 26, 2010 as a Senior Manager with an annual salary of $140,000, plus bonus. Defendants admit they employ hundreds of salaried employees in the State of Washington, and thousands of salaried employees in the United States of America who consult with and provide services for various technology companies including Microsoft, Boeing, Cisco Systems, Honeywell and AT&T, among others. Plaintiff and members of the proposed class(es) worked for Defendants in Washington and other states within the United States of America.

After Mr. Kirchoff received his initial pay check in the amount of $2070, he advised Wipro by e-mail that he believed his pay for the week of July 26-31 should have been $2692.31, so he was owed an additional $622.31. Declaration of Leif Kirchoff in Opposition to Defense Summary Judgment Motion (Kirchoff Dec). Exhibit A to that declaration is a copy of Mr. Kirchoff's initial pay stub received from Wipro. Wipro responded that he was really only owed $2258.13 (or another $188.13), because he was

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--2

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

employed 6 days in July, 2010 (July 26-31), and when his annual salary was divided by 12 to achieve a monthly salary figure ($11667), then that monthly figure was divided by 31 (the number of days in the month of July) to achieve a daily rate ($376.35), which was then multiplied by 6 (the number of calendar days from July 26 through 31), the product is $2258.13. Through a series of e-mail exchanges, Mr. Kirchoff explained that, per 29 C.F.R. §778.1123(b) and 29 C.F.R. §541.602, the lawful method for calculating pay for salaried employees who work a partial week is to reduce the annual salary to a **weekly** salary by dividing the annual figure by 52, then divide that weekly salary by 5 (the number of **working days** in a week) to achieve a daily rate, then multiply the daily rate by the number of days actually worked (5 in his case) to arrive at the correct result: $2692.31. *See* Exhibit B to the Kirchoff Dec.

Wipro disagreed, and insisted that the calculation be based on the **monthly** salary (not weekly), and based on **calendar days**, not work days. During this e-mail exchange, Mr. Kirchoff was sent a table showing how Wipro calculated his pay for that initial pay period. *See* p. 3 of 5 of Exhibit B to the Kirchoff Dec.

Wipro did pay an additional $188.13 in September, 2010, to which Mr. Kirchoff responded that this still left a deficit of $434.31 for his initial week of employment. A copy of this make-up pay stub from Wipro is Exhibit C to the Kirchoff Dec.

Ultimately, after another series of e-mail messages, Wipro agreed on October 7, 2010 to pay another $393 for Mr. Kirchoff's work during the week of July 26. A copy of this second supplemental paycheck in the amount of $393 is Exhibit D to the Kirchoff Dec. To explain its position, Wipro sent Mr. Kirchoff a table outlining the calculations behind the $393 number, which is Exhibit E to his declaration.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--3

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

This still leaves $41.31 unpaid for his first week of employment.  This is because, although Wipro properly (and finally) based this new calculation on **work days** rather than **calendar** days, Wipro based its calculations on a **semi-monthly (or pay period)** rather than a **weekly** salary figure.  *Id.*  A copy of Mr. Kirchoff's entire second e-mail exchange with various Wipro employees on this topic is Exhibit F to his declaration.

Given this history, the statement in Paragraph 6 of the declaration of Chandrashekar Nagaraju that Wipro used the formula specified in that paragraph is misleading.  Wipro did not use the method detailed in Mr. Nagaraju's declaration (the Pay Period method) until after Mr. Kirchoff complained he had been underpaid, and then only after extensive e-mail exchanges.  Wipro based its initial calculation of Mr. Kirchoff's daily rate on **calendar** days, not **work** days, and confirmed those calculations in their e-mail messages.  Only after he pointed out that Wipro's methods violated Department of Labor regulations did they ultimately switch to using **work days** rather than **calendar days** in their calculations.  Although Wipro agreed that using calendar days was incorrect, it still calculated Mr. Kirchoff's daily rate of pay based on the number of work days in the **pay period**, not the **work week**.  Mr. Nagaraju's formula thus refers to the Pay Period/Work Day method ultimately used, not the Calendar Day method used by Wipro up to that point.

Mr. Kirchoff's employment was terminated by Wipro effective January 27, 2011. When Wipro calculated his last paycheck, it used the Pay Period/Work Day method ultimately employed to calculate Mr. Kirchoff's pay for his initial employment week. Thus, Wipro used **work days** rather than the **calendar days** in its math, but still shorted his pay by basing its calculation of his daily salary rate on a **semi-monthly** (or pay period) rather than a **weekly** rate (the "Workweek" method).  The result is a lower daily

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--4

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

salary rate of $530.30 rather than $538.46, for total pay of $4773, and a resulting deficit for the final pay period of $73.43.

Discovery in this case has revealed that many other salaried Wipro employees have been significantly underpaid.  This is not only because Wipro often continued to use **calendar days** (which Wipro concedes is incorrect) rather than **work days** in its calculations even after the e-mail exchange with Mr. Kirchoff, but that even when using the "Pay Period" method, Wipro has paid less to salaried employees, on average, than is required by Department of Labor regulations.  Exhibit H to the Kirchoff Dec. is a copy of an Excel spreadsheet he prepared based on sample payroll data produced by Wipro in response to this Court's discovery orders.[1]  The payroll data covers a sample of salaried Wipro employees in the United States who either joined or left Wipro during the period covered by the statute of limitations in this case.  The purpose of this spreadsheet is to determine which pay method Wipro actually used, and to compare the amounts actually paid by Wipro to those employees (including Mr. Kirchoff) to the amounts payable under four methods, which  have been dubbed:  (1) Calendar Day (the method Wipro initially used when Mr. Kirchoff was hired in July, 2010; (2) Pay Period (the method Wipro ultimately used when paying Mr. Kirchoff); (3) Workweek (which is the method mandated by Department of Labor regulations) and (4) "None.  "None" is the entry in Column BY when the data do not correlate to any of the other three methods, making it impossible to determine which method was used.

---

[1] The paper copy attached to Mr. Kirchoff's declaration is the "short version," which includes only those columns containing the identifying information, pay data and results of Mr. Kirchoff's analysis, because the full spreadsheet contains 606 rows and 80 columns, which is impractical to print.  Undersigned counsel will e-mail the "full version" in electronic form to the Court and to defense counsel.  The full version includes all formulae and data included in Mr. Kirchoff's analysis, so a full critical evaluation may be conducted if desired.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--5

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

Mr. Kirchoff also created a graph (Exhibit I to his declaration) based on the data in this spreadsheet which shows which method Wipro used over time.[2] This graph shows that Wipro has not consistently used any method to calculate pay for salaried employees during their initial or terminal weeks of employment, but that it began moving away from the concededly incorrect Calendar Day method, and toward the Pay Period method beginning in 2008, and continued the trend through 2011. Thus, there are many Wipro salaried employees who have been underpaid to one extent or another, from 2008 to 2011, either through use of the Calendar Day method or the Pay Period/Work Day method.

Notably, Wipro payroll employees were still basing calculations on **calendar** days, not **work** days, even when Mr. Kirchoff's final payroll was calculated. Exhibit J to the Kirchoff Dec. is a copy of an e-mail message he received from Nikita Lochub of Wipro on March 1, 2011. The entry in the last column of the bottom row of the table included in Ms. Lochub's message (which is highlighted on the paper copy delivered to chambers) notes that the $4773 paid to him, for his final week of Wipro employment was for "Base cycle for 12 days—cycle 2 January." As he was terminated by Wipro effective January 27, 2011, there were 12 **calendar** days between January 16 and January 27, 2011 while there are 9 **work** days in that period. *Id.*

After reviewing Wipro's opening brief and declarations on this motion, which argues that the Pay Period method compensates employees as fairly as does the Workweek method, Mr. Kichoff prepared graphs comparing the amounts payable to salaried Wipro employees using the Workweek and Pay Period methods over the course of a calendar year, with a hypothetical employee starting on each day of the year at the

---

[2] The graph appears as "Sheet 1" on both the "short version" paper copy attached to Mr. Kirchoff's declaration, and the "full version" electronic copy of this spreadsheet e-mailed to the Court and to defense counsel.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--6

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

salary he was paid: $140,000 per year. Copies of those graphs are Exhibit K to Mr. Kirchoff' declaration. They show that if employees were to start their employment on a random Monday, or end their employment on a random Friday, equally distributed through the year (using the 2011 calendar), 77% of these hypothetical employees would be paid less under the Pay Period method than under the Workweek method. While some employees will earn more under this computation method, most will not. This is because 31-day months favor the employer (the second pay period in that month always has 16 calendar days, resulting in a bigger denominator), the four 30-day months (April, June, September and November) are neutral (because the second pay period in that month has 15 days, just like the first pay period of every month), but February, the one 28-day month—with a smaller denominator-- favors employees. But, there are 7 thirty-one day months (January, March, May, July, August, October and December) and only one 28-day month—February. On an annual basis, this 7/1 ratio skews the pay due to employees in the employer's favor—by a ratio of 77% to 23%. Because the number of working days varies in a pay period, using Wipro's pay period computation method will result in an individual employee's calculated equivalent daily or hourly rate fluctuating based on the pay period he/she starts or ends work. Thus, while the Pay Period method does pay **some** salaried employees more than would be due under the Workweek method because of the difference in numbers of working days in various pay periods, 77% of salaried employees are paid less than is required by the Workweek method.

## ARGUMENT

This suit challenges two components of Wipro's payroll computation methods: (1) Wipro's frequent and continued use of **calendar days** to calculate the daily rate of pay for salaried employees during their initial and terminal weeks of employment (the Calendar Day method) and (2) calculating salaried employees' daily pay rate on a **pay**

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--7

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

**period** rather than on a **workweek** basis.  These are respectively dubbed the Pay Period and Workweek methods.

As detailed above, Wipro conceded in response to Mr. Kirchoff's e-mail queries that the Calendar Day method is inconsistent with applicable DOL regulations.  But, Wipro thereafter still often used the admittedly unlawful Calendar Day method when calculating the daily pay rate for salaried employees, even after Mr. Kirchoff was discharged in January, 2011.  *See* Column BY on Exhibit H to the Kirchoff Dec.

This defense motion addresses only the challenge to use of the Pay Period method.  This is because in response to his e-mail queries, Wipro *ultimately* used the Pay Period method to figure Mr. Kirchoff's pay.  Since he is the sole putative class representative, if the Pay Period method is found lawful, Mr. Kirchoff has no claim for damages, and this putative class action (along with its admittedly valid claims for damages on behalf of thousands of salaried Wipro employees underpaid pursuant to the Calendar Day method) disappears.

The defense motion should be denied for two reasons:  (1) the Workweek method is the authorized method, and (2) Wipro's Pay Period method does not comply with the FLSA because it does not produce proportional results.

Wipro also seeks dismissal of the double damage claim under RCW 49.52.050(2) and 49.52.070, arguing that if the Pay Period method is lawful, there is no bona fide dispute over the obligation to pay.  This motion should also be denied, not only because the Pay Period method is not lawful under the FLSA, but because Wipro continued to use the Calendar Day method to underpay putative class members even after conceding that it

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--8

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

was unlawful in Mr. Kirchoff's case, and did not uniformly apply the Pay Period method thereafter, raising a fact question about Wipro's good faith.

### 1. The Workweek Method is the Authorized Method for Calculating the Daily Rate of Pay for Salaried Employees.

The authorized method under DOL regulations for calculating a daily or hourly pay rate for salaried employees is based on workweeks, not pay periods. 29 C.F.R. §778.113(b), specifies the method for calculating the "regular rate" of pay for salaried employees:

> (b) *Salary for periods other than workweek.* **Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent.** A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). **A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52.** Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour. Under regulations of the Administrator, pursuant to the authority given to him in section 7(g)(3) of the Act, **the parties may provide** that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular workday. Of course, the resultant rate in such a case must not be less than the statutory minimum wage.

(Bold emphasis added). It is significant that figuring the daily or hourly rate of pay on a monthly basis is only approved when "the parties…provide." So, absent agreement (of which there is no evidence in this case), it is unlawful to determine an hourly or daily rate on a monthly basis, or any basis other than a workweek.

There are no regulations promulgated under Washington's Minimum Wage Act (MWA) which address this precise issue. But, Washington Courts are instructed to look

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--9

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

to the FLSA for guidance when interpreting the MWA.  *Anfinson v. FedEx Ground Package System, Inc.,* __ Wn.2d ____, 281 P.3d 281, 298 (2012).

Pay requirements for all employees under the FLSA are premised on the workweek not only for purposes of calculating overtime, but because it produces consistent results:  There are always 52 weeks in a year, and there are always 5 work days in a work week, while the number of calendar days and work days varies from month to month.  This is arguably one reason that, when calculating an hourly rate for purposes of overtime payment to a non-exempt salaried employee, 29 C.F.R. §778.113(b) requires that "Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent."  The amount of pay due thus does not change with the varying number of days in the months on the calendar.

### 2. The Pay Period Method Does Not Comply With the FLSA Because it Does Not Produce Proportional Results.

Defendants present a carefully crafted argument that their "Pay Period" method for calculating the daily rate of pay for salaried employees in the U.S. is an approved alternative way to comply with the FLSA.  This argument is premised on language in 29 C.F.R. §541.602(b)(6) and (c) which states:  (1) instead of "an hourly or daily equivalent of the employee's full weekly salary…an employer may pay a **proportionate part** of an employee's full salary for the time actually worked in the first and last week of employment" and (2) when calculating the hourly or daily rate of pay:   "the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount **proportional to** the time actually missed by the employee."  (Bold emphasis

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--10

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

added).  The foundation of this argument is, thus, that Wipro's "Pay Period" system produces results which pay a "proportionate part" of the semi-monthly salary for time worked.  Wipro argues that, depending on the number of work days in a given pay period, their method provides more pay to workers in some pay periods, but less pay to workers in others pay periods, and so it "goes both ways."  Motion for Summary Judgment, at p. 6, n. 5 and p. 8, n.8.  Wipro thus equates "going both ways" with "proportional."  They are not the same thing.

"Proportional" means:  "**1a:** Being in proportion:  corresponding in size, degree or intensity…**b:**  having the same or a constant ratio."  *Websters Third New International Dictionary, Unabridged,* 1993.  Or, "(of a first quantity with respect to a second quantity) a constant multiple of: The quantity y is proportional to  x if  y = kx, where  k is the constant of proportionality."  *Dictionary.com.*  The key to proportionality is thus constancy, or consistency.  Using the mathematical example, quantity y is not proportional to x if "k" is not constant, so "k" is a different number depending on which pay period is at issue.  If the "constant of proportionality" is not constant, the results are not proportional.  Thus, "proportionate" does not mean "goes both ways," "works out close enough in the long run" or "close enough for corporate work."  It means consistently, predictably and truly proportional.

Thoughtful analysis of the data in Mr. Kirchoff's Exhibit K shows that the Pay Period system does not produce results which are even close to proportional, because the value of "k" changes depending on which pay period (the "k" value) is used.  As

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--11

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

demonstrated by that Exhibit, the employee's daily rate of pay fluctuates depending on when the employee's first or last day of employment occurred.

But, even more important is the fact that **77% of the time,** the Pay Period method not only results in disproportionate pay, but **less** pay to the employee than the approved Workweek method.  If one carefully studies Exhibit K, it is clear that the vast majority of the time, the employee's pay is less (falls below the middle line), while the percentage of the time employee pay ends up higher (above the middle line on Exhibit K) is small---just 23%.[3]  As explained above, this is because of the vagaries of the Roman calendar, which includes 7 thirty-one day months, 4 thirty-day months and 1 twenty-eight-day month.[4]  The 7 thirty-one-day months favor the employer, the 4 thirty-day-months are neutral, and the 1 twenty-eight-day month favors employees.  On an average annual basis, this 7/1 ratio thus skews the results heavily in favor of lower pay to employees:  77% to 23%.  A method which does not produce "proportional" results because it underpays employees 77% of the time cannot be squared with the mandate of 29 C.F.R. §541.602(b)(6) that "the employer must pay a *proportionate part* of the employee's full salary…" for work days during the initial and terminal weeks of employment.  (Italics added).

The importance of such consistency is obvious.  The 77% of salaried employees (including Mr. Kirchoff) who have been underpaid by Wipro during their initial and/or

---

[3] The full version of the spreadsheet from which this graph was created is too large to sensibly print and submit on letter-sized paper.  So, only the graph has been submitted as an exhibit to Mr. Kirchoff's declaration.  But, the full version is being e-mailed by Plaintiff's counsel to the Court and defense counsel, to enable thorough analysis if desired.

[4] Had Julius Caesar and Augustus Caesar been blessed with smaller egos, so days would not have been "stolen" from February so their namesake months July and August would have 31 days, our calendar would be more balanced.  Perhaps then the Pay Period method would be more proportionate.  But, alas, society has adopted the unbalanced Roman calendar, which makes it impossible for calculations of daily pay rates on a semi-monthly pay period basis to be even close to proportional.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--12

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

terminal weeks of employment whenever the Pay Period method was used probably would take little comfort in knowing that Wipro may have overpaid 23% of their peers to whom the Pay Period method was applied.  The fact that 23% of Wipro's salaried employees may have received an unforeseen bonus does not mean that the underpayments to the remaining 77% were "proportional."

A method for pay calculation which results not only in inaccurate pay, but lower average employee pay than the approved Workweek method, is also inconsistent with the intent and purpose of the FLSA.  The FLSA is a remedial statute, and so is to be liberally construed.  The congressional purpose in passing the FLSA was "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728,739, 101 S.Ct. 1437, 67 L.Ed. 2d 641 (1981).  Pursuant to that goal, coverage under the FLSA is to be construed "liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L. Ed. 2d 243 (1959); *Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141 (9th Cir. 2007).  For this reason, state and local laws which provide greater benefits to employees than those granted by the FLSA have been regularly upheld as consistent with the purpose and intent of the FLSA.  *See, e.g., Rogers v. City of Richmond, Virginia,* 851 F. Supp 2d 983 (E.D. Va. 2012)*; Hotel Employees Association of San Francisco v. Vial,* 22 Wage and Hour Cases 892, 1976 WL 1517 (N.D. Cal 1976).  Interpreting the Act to prohibit a method which underpays 77% of affected salaried employees is liberal construction "to the furthest reaches consistent with Congressional direction."  358 U.S. at 211.  Allowing Wipro to

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--13

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

use a payroll calculation method which pays salaried employees less, on average, than the amounts due them under the approved Workweek method would be narrow construction inconsistent with the intent and policies underlying the Act.

It is anticipated that in reply, Wipro will argue that the Pay Period method really is proportional because the daily rate is based on the proportion of work days in the pay period to the number of calendar days in the pay period.  In response, one must ask: "Then what is the proportionality constant?"  The answer, of course, is that it depends on the number of work days and calendar days in the pay period at issue:  so it is neither constant nor consistent under the Roman calendar.  In the second pay period of February, the employee is paid more.  In the second pay period of January, March, May, July, August, October and December, the employee is paid less.  Unilateral application (without agreement of the employee) of such an inconsistent, unfair method finds no support in the controlling regulations, equity or logic.

### 3. There is a Bona Fide Dispute as to Wipro's Good Faith and Willfulness.

Whether an employer acts willfully and whether there is a bona fide dispute are questions of fact. *Schilling v. Radio Holdings, Inc.,* 136 Wn.2d 152, 160, 961 P. 2d 371 (1998).  The court may decide the question as a matter of law only where reasonable minds could not differ.  *Moore v. Blue Frog Mobile,* 152 Wn. App. 1, 221 P.3d 913 (2009); *Dice v. City of Montesano,* 131 Wn. App. 675, 687-88, 128 P. 3d 1253 (2006).  Willful means "merely that the 'person knows what he is doing, intends to do what he is doing, and is a free agent.' *Schilling, supra,* at 160.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--14

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

The sample data produced in discovery and summarized in the spreadsheet that is Exhibit H to Mr. Kirchoff's declaration demonstrate that Wipro chose to continue to use the Calendar Day method long after it admitted in its exchange with him that payroll calculations must be based on work days, not calendar days. Given these facts, reasonable minds could surely differ whether Wipro "knew what it was doing, intended to do what it was doing, and was a free agent" when it chose to continue using a method for calculating the pay of many other salaried employees which it had admitted to Mr. Kirchoff was unlawful. Dismissal of this claim on summary judgment is not appropriate.

## CONCLUSION

The foundation of Wipro's argument on this motion is that its Pay Period method satisfies DOL regulations because it results in payment of a "proportionate part" of the employee's salary. As when the foundation of a building crumbles, Wipro's argument collapses because the Pay Period method does not produce truly proportional or consistent results, and allows salaried employees to be paid less, on average, 77% of the time. Such a result is not consistent with the intent or purpose of the FLSA.

The defense summary judgment motion should be denied, and this class action to recover underpaid wages not only when Wipro used the Calendar Day method, but the Pay Period method, should be allowed to proceed.

Plaintiff's Memorandum in Opposition to
Defense Summary Judgment Motion--15

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM

DATED this 10th day of September, 2012.

| Aiken, St. Louis & Siljeg, P.S. | Schwerin, Campbell, Barnard, Iglitzin & Lavitt, LLP |
|---|---|
| By::/s_____<br>   Ralph C. Pond<br>   WSBA No. 11934<br>   Attorneys for Plaintiff | By:/s_____<br>   Dmitri Iglitzin<br>   WSBA No. 17673<br>   Attorneys for Plaintiff |

Plaintiff's Memorandum in Opposition to Defense Summary Judgment Motion--16

RALPH C. POND
AIKEN, ST. LOUIS & SILJEG, P.S.
ATTORNEYS AT LAW
1200 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 624-2650/FAX (206) 623-5764
POND@AIKEN.COM