UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEIF KIRCHOFF, individually and as class representative,<br><br>Plaintiff,<br><br>v.<br><br>WIPRO, INC., WIPRO TECHNOLOGIES, INC. and WIPRO, LTD, Delaware Corporations,<br><br>Defendants. | C11-568 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendants Wipro, Inc., Wipro Technologies, Inc. and Wipro, LTD, Delaware Corporations' (collectively "Wipro") motion for summary judgment, docket no. 42. Having reviewed all papers filed in support of and in opposition to this motion, the Court enters the following Order.

## I.   Background

The underlying facts of this case are not in dispute. Defendant Wipro is a Delaware corporation, with headquarters in East Brunswick, New Jersey. Wipro employs

ORDER - 1

hundreds of employees in the State of Washington, and thousands of employees in the United States. Wipro provides consulting services for various technology companies.

Wipro hired Plaintiff Leif Kirchoff as a Senior Manager with an annual salary of $140,000. Kirchoff Decl. at ¶ 2 (docket no. 46). Mr. Kirchoff worked for Wipro from July 26, 2010, until January 27, 2011, *Id.*, when Wipro terminated Mr. Kirchoff. Kirchoff Decl. at ¶ 9. The only issue in this case is whether Wipro violated federal and state wage and hour laws by using an improper formula to prorate Mr. Kirchoff's salary for his first and last week of employment. Mr. Kirchoff does not dispute Wipro's right to prorate his salary during those two pay periods, but rather takes issue with the formula Wipro used to prorate his salary.

Wipro calculated Mr. Kirchoff's salary for the disputed periods using the "Pay Period" method,[1] which bases an employee's partial salary on work days. Kirchoff Decl. ¶¶ 7 & 9. Mr. Kirchoff contends that by using the Pay Period method, Wipro underpaid him by $41.31 for the first week of employment and by $73.43 for the final week of

---

[1] Under the Pay Period method, an employee's salary is reduced to a daily rate by dividing the annual salary into 24 semi-monthly pay periods to determine a semi-monthly rate, and then dividing the semi-monthly rate by the number of working days in the semi-monthly pay period to determine a daily rate for the pay period in question. The final salary for the pay period in question is then determined by multiplying the daily rate by the number of actual days worked. *See* Kirchoff Decl. Ex. E. For example, Wipro calculated Mr. Kirchoff's first week's salary as $2,652:

   (1) $140,000/24 = $5,833.33 (semi-monthly rate)
   (2) $5,833.33/11 (for the pay period of July 16-31, 2010, there were 11 working days) = $530.30 (daily rate)
   (3) $530.30 x 5 (number of actual days Mr. Kirchoff worked) = $2,652

ORDER - 2

employment in violation of federal and state wage and hour laws.  Pl.'s Mem. Opp'n Summ. J. at 4:1, 5:1-2 (docket no. 45).

Mr. Kirchoff argues that 29 C.F.R. § 778.113(b) sets forth the authorized and mandated calculation method, the "Work Week" method,[2] to calculate his pay for the pay periods at issue rather than the Pay Period method.  *Id.* at 9-10.  Mr. Kirchoff argues that Wipro under paid him because it used "a semi-monthly (or pay period) rather than a weekly salary figure in its calculation."  Kirchoff Decl. at ¶ 7 & 9.  Mr. Kirchoff further argues that Wipro's Pay Period method leads to inconsistencies in salary calculations due to fluctuations in the number of working days in a month.[3]  *See* Pl's Mem. Opp'n Summ. J. at 10-14.

///

///

---

[2] Under the Work Week method, an employee's salary is reduced to a daily rate by dividing the annual salary by 52 weeks in a year to calculate a weekly rate, and then dividing the weekly rate by 5 working days in a week to determine a daily rate.  Final salary is then determined by multiplying the daily rate by the number of actual days worked.  *See* Pl.'s Mem. Opp'n Summ. J. at 3.  For example, Mr. Kirchoff's first week's salary would be $2,692.31:

    (1)  $140,000/52 = $2,692.31 (weekly rate)
    (2)  $2,692.31/5 = $538.46 (daily rate)
    (3)  $538.46 x 5 (number of actual days Mr. Kirchoff worked) = $2,692.31

[3] The number of working days in a semi-monthly pay period varies from month to month.  For example, from July 16-31, 2012, there were 12 working days.  In contrast, from February 16-28, 2011, there were 9 working days.  Thus, under the Pay Period method, an employee's daily rate will vary because the denominator (number of working days in a semi-monthly pay period) fluctuates from month to month.

ORDER - 3

## II.   Standard

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In support of its motion for summary judgment, the moving party need not negate the opponent's claim, <u>Celotex</u>, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, <u>Anderson</u>, 477 U.S. at 249.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  <u>Id.</u> at 255, 257.  When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  <u>See</u>, <u>e.g.</u>, <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006).

## III.   Discussion

**Fair Labor Standards Act ("FLSA") Requirements**

The FLSA requires that an exempt employee, such as Mr. Kirchoff, be paid on a salary basis.  29 C.F.R. § 541.602.  Further, 29 C.F.R. § 541.602 mandates that "subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."  29 C.F.R. § 541.602(a).  However, an

ORDER - 4

exception provides that an employer may deduct pay from the employee's salary for days not worked in the initial and terminal weeks of employment:

> An employer is not required to pay the full salary in the initial or terminal week of employment. Rather, an employer may pay a proportionate part of an employee's full salary for the time actually worked in the first and last week of employment. In such weeks, the payment of an hourly or daily equivalent of the employee's full salary for the time actually worked will meet the requirement.

29 C.F.R. § 541.602(b)(6).

The regulation also provides that an employer may reduce an employee's salary to a daily or hourly rate for the purpose of calculating the amount owed to the employee: "When calculating the amount of a deduction from pay allowed under paragraph (b) of this section, the employer may use the hourly or daily equivalent of the employee's full weekly salary or any other amount proportional to the time actually missed by the employee." 29 C.F.R. § 541.602(c).

### 1. Methods of Calculation

Mr. Kirchoff argues that the Department of Labor ("DOL") regulations mandate the Work Week method. Pl.'s Mem. Opp'n Summ. J. at 5, 9. This argument is misplaced for two reasons. First, Mr. Kirchoff's argument that 29 C.F.R. §778.113(b) specifies the method for calculating pay for salaried employees' first and final week of employment is flawed. 29 C.F.R. §778.113(b) in relevant part provides the following:

> Salary for periods other than workweek. Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated

ORDER - 5

into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour.

29 C.F.R. § 778.113(b).

While the method suggested by this regulation matches the Work Week method, this regulation applies to overtime compensation for salaried employees.  29 C.F.R. § 778.113(b) is a subpart to Part 778, entitled "Overtime Compensation."  Mr. Kirchoff's dispute does not involve overtime compensation.  Moreover, the applicable regulation, 29 C.F.R. § 541.602, neither incorporates nor cross-references the "overtime compensation" regulation.

Second, the plain language of 29 C.F.R. § 541.602(c) allows for more than one method of calculating an employee's pay for the first and final week.  29 C.F.R. § 541.602(c) provides that an employer may "use the hourly or daily equivalent of the employee's full weekly salary *or any other amount proportional to the time actually missed by the employee.*"  29 C.F.R. § 541.602(c) (emphasis added).  If the only authorized or mandated method is the Work Week method, then there can only be one amount proportional to the time missed.  Thus, the remaining language of the regulation would be meaningless, which runs counter to the basic rule of statutory construction that every word is presumed to have some effect.

### 2. Proportionality Requirements

Mr. Kirchoff argues that the words "proportionate" in 29 C.F.R. § 541.602(b)(6) and "proportional" in 29 C.F.R. § 541.602(c) by definition require use of a fixed constant

ORDER - 6

"k" to calculate salaries in the first and final week of employment.  Pl.'s Mem. Opp'n Summ. J. 10:15-11:21.  In other words, a quantity "y" is proportional to "x" if $y = kx$, where k is a fixed constant.  Under the Pay Period method, k is not a fixed constant because salary calculations fluctuate from month to month.  This argument is unavailing.  First, use of a "fixed" constant necessarily requires use of the Work Week method.  However, the regulations clearly allow use of other methods.  Second, the regulations require that proportionality is to be based on an individual's actual days worked.  Here, Wipro's method is based on the percentage of days worked in the pay period and mathematically correct as a proportionate part of Mr. Kirchoff's full salary.  Finally, although salaries may fluctuate based on the number of working days in a month, ultimately, under both methods Mr. Kirchoff's total annual salary still amounts to $140,000.

**3. State Law Claims**

Both parties agree that the Court may look to the FLSA for guidance in interpreting Washington's Minimum Wage Act.  <u>See</u> Def.'s Mot. Summ. J. at 6 (citing <u>Drinkwitz v. Alliant Technsystems Inc.</u>, 140 Wn.2d 291, 298 (2000) ("Because the MWA is based upon the FLSA, federal authority under the FLSA often provides helpful guidance.")); Pl.'s Mem. Opp'n Summ. J. at 9-10 (noting that Washington Courts are instructed to look to the FLSA for guidance when interpreting the MWA).  Further, similar to the DOL regulations, the State of Washington regulation WAC 296-128-532 allows for employers to prorate salaries for the first and final week of employment: "In the first and final week of employment, an employee's salary may be prorated for the

ORDER - 7

actual days worked." WAC 296-128-532(3)(e). Thus, as Wipro used an acceptable method under the FLSA, Wipro did not violate Washington's MWA. Similarly, Mr. Kirchoff's claim that Wipro willfully withheld Mr. Kirchoff's wages in violation of the Washington Wage Rebate Act must also fail.

### IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, docket no. 42, is GRANTED.

IT IS SO ORDERED.

The Clerk is directed to enter a judgment dismissing the case with prejudice and with costs.

Dated this 2nd day of October, 2012.

THOMAS S. ZILLY
United States District Judge

ORDER - 8